416 So.2d 1283 (1982)
STATE of Louisiana
v.
Anthony L. RUSSELL.
No. 81-KA-2467.
Supreme Court of Louisiana.
June 21, 1982.
*1284 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Warren J. Hebert and Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
Timothy M. Screen and David Randall Buckley, Jeffery Calmes, Baton Rouge, for defendant-appellant.
FRED C. SEXTON, Justice Ad Hoc.[*]
Defendant, Anthony L. Russell was charged in a three-count bill of indictment *1285 with aggravated rape, armed robbery, and aggravated burglary, violations of LSA-R.S. 14:42, 14:64, and 14:60, respectively. On April 13-16, 1981, he was tried by a jury of twelve persons and was found guilty of the responsive verdict of forcible rape on Count One, and guilty as charged on Counts Two and Three.
Thereafter he was sentenced on Count One, to 40 years at hard labor; on Count Two, to 80 years at hard labor; and on Count Three to 20 years at hard labor. Each sentence was assessed concurrently to the other counts and without benefit of probation, parole or suspension. Defendant originally asserted nine assignments of error and argues the first six of these before us. Accordingly assignments 7, 8 and 9 are considered abandoned. State v. Edwards, 261 So.2d 649 (La.1972).
FACTS
Testimony at the trial indicated that early on the morning of December 3, 1980, Marlin Michelle Troxell was awakened in her bedroom at 3251 Carlotta Street in East Baton Rouge Parish by a black male later identified as the defendant. A hallway light shone sufficiently to enable Michelle to view the intruder's face and the knife which he held in his hand. The assailant removed a necklace and rings from Michelle and then undressed her prior to having sexual intercourse with her, all the while holding the knife in his hand. Thereafter he rummaged through her dresser and closet. Michelle testified that after the rape, while the defendant was walking around the bedroom he told her not to look at him. She stated she asked if it was alright to call him "Dave" and he agreed. Prior to leaving the defendant also took money and Michelle's driver's license from her wallet, which license contained her parents' address. After reporting the offense and the ensuing hospital examination, she selected the defendant out of a six man lineup some ten days after.
About four days after this incident, the victim's parents began to receive suspicious phone calls at their home, the address on Michelle's stolen driver's license. In one of these calls Michelle's mother answered the phone and the male caller asked to speak to "Marlin."[1] Upon calling her husband to the phone, thinking that was whom the caller wanted, the caller hung up. Later that same evening when another call was received by Mrs. Troxell asking for Marlin, she was asked by the caller if she knew who was calling. Having learned of the details of the incident from her daughter, she answered in the affirmative that the caller was "Dave." He stated he could not talk long and would call back soon as he could. He called again a few minutes later and apparently thinking he was speaking to Michelle inquired "Why are you doing this?" He went on to remind her that she had promised not to call the police if he did not hurt her. He further reminded her he did not hurt her and told her he knew that she had been to the hospital. He told her she had been followed and that someone was continuously watching her, stating that "Even if I go, it doesn't matter." He went on to state that he had been to prison before and that there were others who would take care of her.
Mrs. Troxell coincidentally worked for the phone company and arranged to have the line traced.
She continued to receive several more calls and pretended each time to be her daughter, engaging in fairly lengthy conversations with the caller during which the caller stated that she was picked at random by others and that he was directed to her. He told her that he was ordered to hurt her and a conversation ensued about whether the caller was proud of his actions and how he would feel if a similar event had happened to a female relative of his. Mrs. Troxell pretended that the ring which was taken during the incident had been given to *1286 her by a boyfriend and contended that she wanted it back, trying to make arrangements to meet with the caller. As the caller was testifying that arrangements could be made for the return of the jewelry the caller put the phone aside apparently saying "just a moment." She then heard muffled voices and the caller returned and got off the phone.
Early in the morning hours of December 9 the last of these calls was traced and Detective Odom was notified. He went to the address to which the phone was registered and subsequently arrested this defendant who resided there with his mother and father.
ASSIGNMENT OF ERROR NO. 1
Defendant, in assignment of error number one, asserts that the trial court erred in denying his motion to suppress the lineup identification, asserting that he was subjected to the lineup without being advised of his right to counsel or making a knowing and intelligent waiver of that right, as per the Sixth and Fourteenth Amendments to the United States Constitution. He further contends that the manner in which the lineup was conducted by the officers involved violated his due process rights under the Fourteenth Amendment.
The defendant testified that prior to the lineup he and the other participants were taken to a room where numbered tags for use in the lineup were on a table. He chose tag number two, placing it around his neck. But before the lineup actually started he switched numbers with another party in the lineup and became number five.
He further testified at the motion to suppress that upon entering the lineup room someone behind the mirror, whom he assumed to be the victim, hollered out that it was number two and that she was sure of that. He stated he was later informed that he had been picked out of the lineup. Lawrence Johnson testified during the trial itself that he was indeed lineup participant number two and that he heard someone say that number two was the culprit. Detective Ben Odom who conducted the lineup denied that the victim picked number two as her assailant and testified that her choice was definitely number five. He further testified that she was not prompted in any way, to his knowledge, by any other officers present.
Detective Odom testified at the motion to suppress that as a matter of course he called the public defender's office, not because the defendant requested it, because that was his procedure when he was conducting a lineup when the defendant was represented by that organization.
Louisiana has followed the United States Supreme Court's limitation of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) in holding that presence of counsel at a preindictment lineup is not a due process requirement. State v. Stewart, 389 So.2d 1321 (La.1980). But see State v. Thomas, 406 So.2d 1325 (La. 1981).
Furthermore just as in Stewart, supra, it appears that the unrequired good faith effort was made by the police to notify defendant's counsel of the intention to hold a lineup.
Additionally, even assuming arguendo the validity of the defendant's position, it is abundantly clear from this record that the victim's in court identification of the defendant stems from her independent recollection of the defendant from the time of the offense and was not a product of a tainted lineup. She had ample opportunity to view him and testified that her bedroom was well lit from a light in the hallway. Also she testified that it had become light outside prior to his leaving. She had intimate contact with him for at least 30 minutes and had conversation with him as he rummaged through her things, as he stood at one point at the bedroom door to the hallway with the light behind him. Her description of the defendant to the police immediately following the incident was detailed. At the trial she was positive that her assailant was number five in the lineup.
Thus this assignment of error lacks merit.
*1287 ASSIGNMENT OF ERROR NO. 2
By assignment of error number two the defendant asserts that the trial court erred in admitting improper hearsay testimony of Florrie Troxell, the victim's mother, to the effect that her daughter had told her that she had called the defendant by the name of "Dave."
This statement was offered to prove that Mrs. Troxell had called the defendant by the name "Dave" so that when she spoke to him on the phone she was able to tell who he was, as discussed in assignment of error number three. This testimony was not offered to prove the matter asserted, that the defendant's name was "Dave," but rather that she knew that her daughter had called the defendant by that name. The evidence was thus offered merely to show that the conversation had occurred and to explain the use of the name "Dave" by the victim's mother during her subsequent phone conversation with the defendant. Under these circumstances the evidence is not hearsay. State v. Toomer, 395 So.2d 1320 (La.1981).
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 3
Here the defendant argues that the trial court erred in allowing the introduction of certain inculpatory statements made by the defendant for which no notice was provided as per LSA-C.Cr.P. Art. 768.
This argument pertains to the testimony of the victim's mother, Mrs. Florrie Troxell, who testified extensively as to conversations which she had with a person who identified himself on the phone as "Dave." "Dave" gave statements which were incriminating in nature as were previously chronicled herein in the recitation of facts. It should be noted that in spite of several efforts Mrs. Troxell was unable to identify the voice of the defendant as being the phone caller. However the implication from the evidence is that when she was talking to him on the telephone someone came to his door and he subsequently returned and hung up. The police officer who arrested him testified that when the defendant came to the door he told the officer to wait because he was on the phone. (This statement is treated in another assignment of error and is not of concern here as there is no evidence that Mrs. Troxell heard the statement.)
In response to the defense discovery motion inquiring whether defendant made any oral confession or statement of any nature, the state responded "yes." The motion made no additional inquiry as to when, where or to whom any such confession or statement was made. Thus the defense was on notice that a statement existed, but failed to pursue the matter. The state thus complied with LSA-C.Cr.P. Art. 716(B).[2]
An "inculpatory statement" has been defined as an out of court admission of incriminating facts made by the defendant after the crime has been committed. State v. Brumfield, 329 So.2d 181 (La.1976).
We have serious concern whether the statement introduced herein comes within the definition just noted. We are mindful of State v. Bodley, 394 So.2d 584 (La.1981), where the defendant, known to the person to whom he was talking, stated that the deceased was doing fine and had gone to work that morning. The coroner's evidence was that the victim had died prior to the time of that telephone conversation and thus the conversation suggested an active attempt to conceal the victim's death. The rationale in Bodley was that the statements were exclupatory rather than inculpatory and contained no admission as to any element of the offense of murder for which the defendant was charged. The court noted that the statements were not damaging until coupled with other testimony.
Such is also the case here. The testimony of the witness was not that this defendant *1288 made those statements but rather some person whose voice she was never able to recognize as the defendant, known to her as "Dave," made the statements. It can be argued that it was the other evidence when coupled with the fact of the statements that were incriminating, rather than the content of the statements themselves.
However, assuming arguendo that this is the type statement for which a 768 notice is required, we find no prejudice in the state's failure to render such a notice in this case, and thus a reversal is not mandated. State v. Thomason, 353 So.2d 235 (La.1977); State v. Qualls, 353 So.2d 978 (La.1977); State v. Sneed, 316 So.2d 372 (La.1975).
The purpose of the statutory scheme of LSA-C.Cr.P. Arts. 766-768 was to prevent surprise and allow adequate time for the preparation of the defense, as well as to avoid certain problems that had been attendant to mentioning of confessions or inculpatory statements in the state's opening statement.[3]
The defense did not complain of surprise either at the trial itself or before this court. A reading of the entire record would tend to indicate that the defense was aware of this evidence. The defense had been apprised of the existence of oral statements in the state's response to the defense motion for discovery, which the defense did not formally pursue. Also, no showing of actual prejudice was made. The circumstances are similar to Sneed, supra, where the minutes indicated that the defense motion for oyer of oral confessions or statements had been agreed to by the state, but there was no 768 notice.
Thus any error in failing to furnish a 768 notice, if indeed necessary, is without prejudice and harmless. LSA-C.Cr.P. Art. 921; Thomason, supra, Qualls, supra, and, Sneed, supra.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 4
Defendant contends in assignment of error number four that the trial court erred in denying a defense motion for mistrial based upon testimony about past crimes of the defendant as testified to by Florrie Troxell, the mother of the victim.
As we have noted, Mrs. Troxell testified that her daughter had related the events of the offense to her and that she received a phone call from a party who apparently thought she was her daughter. The caller asked if she knew who it was and she had responded that it was "Dave" (the name her daughter had given the assailant). She testified that the caller asked her why she was "doing this." She further testified that he stated that "I promised that I wouldn't hurt you if you wouldn't call the police and I did not." He then stated:
"... even if I go, it doesn't matter. I've been to prison before ... there are others who will take care of you. They'll carry on."
There was no contemporaneous objection to this testimony but after cross-examination and the luncheon recess defense counsel moved for a mistrial.
In his charge to the jury, the trial judge instructed the jury that if there was any evidence that tended to show that the accused had committed any other offense for which he was not on trial that they were not to consider any such evidence in weighing his guilt or innocence as to the crime for which he was charged.
It is well settled that objections not timely raised are not to be considered on appeal. State v. McDermitt, 406 So.2d 195 (La. 1981). Furthermore the remark was not made by any of the officials enumerated by LSA-C.Cr.P. Art. 770.[4] Here the state's *1289 witness was merely responding to a question concerning a conversation that was evidentiary in nature and was testifying to a statement by "Dave." Thus it is evidentiary in nature and is not the type evidence of a previous conviction contemplated by LSA-R.S. 15:495.[5]
Furthermore the state was in good faith and any conceivable error was cured by the trial court's instruction.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 5
The defendant urges that the trial court erred in denying his motion for mistrial based on the testimony of Detective Ben Odom involving an alleged inculpatory statement of defendant, without prior notice under LSA-C.Cr.P. Art. 768.
The state had elicited testimony from Detective Odom that he had gone to defendant's residence in the early morning hours of December 9, after a trace of a phone call received by Mrs. Troxell had directed him to that residence. Detective Odom testified that the defendant answered the front door and after the officers identified themselves he allowed them to enter the residence. Detective Odom stated that the defendant left the room and went into a room which he later determined was the defendant's parents'. The following exchange occurred:
"Q. Was there a phone in that room?
A. According to his father there was. I didn't see a telephone but I didn't look in the bedroom either except to ascertain that that was their bedroom."
Thereafter on cross-examination defense counsel asked Detective Odom:
"Q. And you said on that particular occasion you did not check to see where if any phone, where it was located?
A. I was advised by one of the members of the residence
Q. Of your own personal knowledge.
A. No, I did not check.
Q. You didn't see Anthony Russell go to any phone?
A. No, I saw him go into the bedroom.
Q. And you didn't see Anthony Russell talking on the phone?
A. No, I did not."
and later asked:
"Q. Did Anthony Russell tell you he knew nothing about this event?
A. Yes, he did."
On re-direct, the state then proceeded as follows:
"Q. Officer, defense counsel asked you did Anthony Russell tell you he did not do it? I'd like to ask you, you previously testified you had arrived at the Russell residencewhat is it, 2161 Kentucky Streetyou testified that Anthony Russell was the one who answered the door?
A. Yes, sir.

*1290 Q. Okay. What did he say right at that time?
A. He said, I'll be with you in a minute; I'm on the telephone.
Q. He said he was on the telephone?
A. Yes, sir."
After a short re-cross examination, defense counsel moved for a mistrial based on the failure of the defense to receive a 768 notice of inculpatory statements.
It appears here that the state was merely attempting on re-direct examination to clarify an area brought out by defense on cross-examination. When the defense opens the door for a particular area on cross-examination it then becomes a proper subject matter for re-direct for the purpose of eliciting an explanation of the testimony brought out by defense on cross-examination. State v. Kirsch, 363 So.2d 429 (La. 1978); State v. Overton, 337 So.2d 1201 (La.1976); State v. Hollingsworth, 337 So.2d 461 (La.1976).
Moreover the statement here to the effect "Just a minute, I'm on the telephone," in the context here made is not such an out of court admission of facts, circumstances or involvement from which guilt may be inferred so as to require notice under LSA-C.Cr.P. Art. 768. State v. Bodley, 394 So.2d 584 (La.1978); State v. Brumfield, 329 So.2d 181 (La.1976); State v. Brent, 347 So.2d 1112 (La.1977); State v. Fink, 255 La. 385, 231 So.2d 360 (1970).
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 6
In assignment of error number six the defendant contends that the trial court erred in denying defense counsel the opportunity to individually question the jurors with regard to their possible exposure to an allegedly prejudicial newspaper article.
On the third day of the trial the defense counsel noted to the court a newspaper article published the day before which stated that the trial judge had denied a motion to suppress a lineup identification and that the defendant had testified outside the jury's presence that he had switched numbers during the lineup with another inmate, and that the victim had initially chosen this other individual. The article was not filed in evidence but was quoted by defense counsel. Defense counsel then requested the right to question each of the jurors as to possible prejudice individually and out of the hearing of other jurors, which motion was denied. The jury was returned and the trial judge then asked each juror individually, after reminding them of their oath as a juror, whether they had any personal knowledge of the article or whether it had been brought to their attention by any friend or relative. All denied any such knowledge.
A mistrial is not warranted absent a determination that the jurors were actually exposed to the publicity in question and were so impressed by it as to be incapable of rendering a fair and impartial verdict. LSA-C.Cr.P. Art. 775; State v. Monk, 315 So.2d 727 (La.1975). Here questioning by the trial judge of each juror showed that none of the jurors had been even exposed to the newspaper article complained of, much less prejudiced thereby. (The trial judge had consistently warned the jurors during the trial to avoid contact with any of the press accounts thereof.)
Therefore this assignment of error lacks merit.
For the reasons assigned, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judges Fred C. Sexton, Jr., and William Norris, III, of the Court of Appeal, Second Circuit, and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, Jr., and Harry T. Lemmon.
[1] Michelle's full name is Marlin Michelle Troxell and she is called Michelle as Marlin is the name by which her father goes.
[2] LSA-C.Cr.P. Article 716(B)

B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
[3] See Justice Tate's excellent discussion of the history and purpose of Articles 766 et seq. in State v. Sneed, supra, and the authorities cited therein.
[4] LSA-C.Cr.P. Article 770. Prejudicial remarks; basis for mistrial

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or nation origin, if the remark or comment is not material and relevent and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
[5] LSA-R.S. 15:495

§ 495. Impeachment by evidence of conviction; condition precedent to proof by others; prohibition against cross-examination as to indictment or arrest
Evidence of conviction of a crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein.
Amended by Acts 1952, No. 180, § 1.