hSAUNDERS, Judge.
Defendant, Samuel Lee Banks, was charged by bill of indictment filed on February 6, 1995, with one count of aggravated crime against nature, in violation of La.R.S. 14:89.1. Defendant entered a plea of not guilty on March 14,1995. After trial by jury which was held on June 14 and 15, 1995, defendant was found guilty as charged by a unanimous verdict. Defendant was sentenced on June 20, 1995, to twelve (12) years at hard labor without benefit of probation, parole or suspension of sentence. On June 21, 1995, defendant filed a Motion to Reconsider Sentence, followed by a First Supplemental and Amending Motion to Reconsider Sentence filed on July 7,1995. Both motions were denied without hearing on July 10, 1995.
^Defendant now appeals his conviction and sentence, alleging six (6) assignments of error.

FACTS

On January 22, 1994, defendant solicited a child, date of birth April 5,1979, to engage in an act of oral sex with the defendant for compensation. The solicitation took place at the YMCA, where the defendant was a basketball coach. The victim played basketball at the YMCA, but the defendant was not his coach.

ASSIGNMENT OF ERROR NO. 1

By this assignment, defendant claims the trial court erred in denying his Motion for Mistrial based on the fact that three jurors read a newspaper article containing information of other crimes allegedly committed by defendant. On the morning of trial, the trial court asked the jury if anyone read about the ease in the newspaper. Three of the jurors responded that they had. The article was admitted into the record. It was printed the day of trial, June 15, 1995, and contained general information about the charges against defendant and the trial itself. The article, which is reproduced in part below, *456 also contained reference to pending charges against defendant in New Orleans:
In February, New Orleans police arrested Banks on multiple charges of molestation of juveniles and aggravated crimes against nature. The victims in that case were nine of Banks’ students in New Orleans.
Alexandria Daily Town Talk, June 15, 1995.
Defendant’s attorney questioned the three jurors as to whether their knowledge of the contents of the article would affect their ability to give defendant a fair trial. When defense counsel asked one of the jurors, Mr. Walton Watkins, if he could forget about the article while he listened to the evidence presented at trial, Mr. Watkins responded:
| aWell, when I observed the article and read it and realized what it was about, I more or less made up my mind that being that I was on the jury that I would forget about what was in the paper and based [sic] the case on what I hear in Court.
Mr. Watkins was adamant about his belief that he could put what he read aside and not take it into consideration when listening to the evidence presented.
The next juror, Mr. Steven Noel, also stated that nothing in the article would prejudice him against defendant, and he did not anticipate any problem with separating the evidence presented at trial from information he received outside of the courtroom.
The final juror, Mr. Joel Harris, stated he did not read the entire article. When asked if he read the article that morning, Mr. Harris responded:
When I was reading the article I got to Mr. Banks’ name and the fact the trial was starting this week, I stopped. I didn’t want to know anything more. That’s where I stopped. As soon as I saw his name I quit reading it.
Thus, Mr. Harris was not exposed to other crimes evidence printed in the article. After the jurors were questioned, the trial court denied defendant’s Motion for Mistrial.
La.Code Crirn.P. art. 775 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
We decided a similar issue in State v. Roman, 473 So.2d 897 (La.App. 3 Cir.1985). In Roman, The Daily Iberian printed an article about the defendant entitled, “Robbery Rape Trial Begins in Jeanerette.” Id. at 899. Describing the contents of the article, the Roman court stated:
Although the defendant was charged with robbery, he was not in fact being tried for robbery. The article referred to defendant as a man, “... already serving a prison sentence for rape and robbery ...”, and pwent on to say that “Roman is currently serving time at Louisiana’s State Penitentiary in connection with a related ‘crime spree’, which included a couple of other assaults and robberies”. It stated “... Roman was arrested for rape and robbery in May 1983 and twice in June of last year.”
Id. at 899.
The jurors in Roman were unaware of defendant’s prior convictions before reading the article. The defendant alleged that he had chosen not to take the witness stand “specifically to avoid having his prior convictions revealed to the jury.” Id. at 899. The trial court in Roman questioned each juror individually, and each juror stated he was not so impressed by the article as to be incapable of rendering an impartial verdict. In addition, “the trial judge admonished each juror individually to disregard what they had read in the newspaper and to judge the defendant solely on the evidence.” Id. at 899.
The Roman court distinguished its case from State v. Russell, 416 So.2d 1283 (La. 1982), in which the supreme court denied defendant’s Motion for Mistrial. In Russell, the jurors had not actually been exposed to the newspaper article in question, and the trial judge consistently warned the jurors to avoid contact with any publicity concerning the trial. Roman, 473 So.2d 897. Distinguishing Russell, the Roman court stated:
Unlike the situation in Russell, five jurors in the case presently before this court were actually exposed to the publicity. *457 Further, they had not been warned by the trial judge to avoid contact with publicity concerning the case.
Id. at 900.
In granting defendant’s Motion for Mistrial, the Roman court further reasoned:
While the trial judge did question each juror, and admonished those who had read it to disregard the article, we believe that the references to the defendant’s previous convictions were too prejudicial to be overcome by a mere admonishment. We believe that there was a substantial possibility that the jurors who had this knowledge were | sunable to be impartial, thereby denying the defendant a fair trial. As a result, La.C.Cr.P. art. 775 mandates that a mistrial be granted. Accordingly, we reverse the conviction and remand this case to the trial court for a new trial.
Id. at 900.
At the outset, we note the trial court in the present case did not admonish the three jurors who saw the article to disregard the contents of the article while considering the evidence. We note the defendant did not request an admonishment. Further, the two jurors who actually read the article stated they would be able to forget the contents of the article when considering the evidence presented.
In its final charge to the jury, the trial court further stated:
You must determine whether or not a fact has been proven only from the evidence presented or from the lack of evidence. The evidence which you should consider consists of the testimony of the witnesses, the exhibits this Court has permitted the parties to introduce. You must consider only evidence that was admitted during the trial.
While the trial judge did give a final charge to the jury to only consider evidence that was admitted during trial, we believe that the references to the defendant’s pending charges published in the Alexandria Daily Town Talk, which was read by jurors, were too prejudicial to be overcome by a mere final charge. Moreover, no admonition could reasonably be expected to negate the damage done by this article.[1]
While this court in no way doubts the sincerity and good faith of the jurors who stated that they would not consider the newspaper article, we must question whether it is possible for anyone to put such a damning assertion out of one’s mind in determining the guilt or innocence of the accused. One is reminded of the venerable story wherein a person is instructed to sit for one hour and not think of a pink |6elephant. Invariably, the effort ends in failure. Surely, if it is difficult or impossible to put something as irrelevant as a pink elephant out of one’s mind, how much more difficult would it be to disregard a newspaper article that relates so clearly and strongly to the ultimate question that must be answered by the jury. No juror should be asked to perform such mental gymnastics. No defendant should have his right to a fair trial made dependant on the ability of a juror to disregard that which cannot be disregarded. Due process demands more. If a newspaper article is so damning that a juror might reasonably be expected to lose his objectivity if exposed to the article, then such exposure should disqualify the juror. Put another way, the subjective good faith of the juror should not outweigh the objective damage done by the article.
Because of our holding, we pretermit discussion of all remaining assignments of error. We reverse the conviction of defendant and remand this case to the trial court for a new trial.

CONCLUSION

In accordance with La.Code Crim.P. art 775 and for the foregoing reasons, we dismiss defendant’s conviction and remand this ease to the trial court for a new trial.
REVERSE AND REMANDED.
AMY, J., dissents.

. In a paraleipsis of historic proportion, Cicero is reputed to have stated that, “I will pass over in silence the fact that he [his adversary] illegally crucified 3,000 people.” How might one phrase an admonition to negate the impact of this single sentence?