STATE OF LOUISIANA
v.
ROBERT D. TROQUILLE
No. 2007 KA 1486.
Court of Appeal of Louisiana, First Circuit.
June 6, 2008
Not Designated for Publication
DONALD D. CANDELLA, Assistant District Attorney Anthony G. Falterman District Attorney Counsel for Appellee State of Louisiana
KATHERINE M. FRANKS, Counsel for Appellant Robert D. Troquille
ROBERT D. TROQUILLE, In Proper Person.
Before: PARRO, KUHN and DOWNING, JJ.
DOWNING, J.
The defendant, Robert D. Troquille, was charged by grand jury indictment with two counts of second degree murder, violations of La. R.S. 14:30.1. The defendant entered a plea of not guilty as charged. Following a trial by jury, the defendant was found guilty as charged. As to each count, the trial court sentenced the defendant to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. The trial court ordered that the sentences be served consecutively. The defendant now appeals, raising counseled errors as to the trial court's denial of his motion for mistrial and the following pro se assignments of error:
1. There was insufficient evidence to convict the defendant of second degree murder.
2. The defendant was denied a fair and impartial trial by the redundant and prejudicial testimony of Dr. Suarez.
3. The defendant was denied the right to judicial review for lack of a transcript of bench conferences.
For the following reasons, we affirm the convictions and sentences.

STATEMENT OF FACTS
On or about May 22, 2005, just after noon, Deputy Jeffery T. Griffen, Lieutenant Martin, and Deputy Jason Crabtree of the Ascension Parish Sheriffs Office were dispatched to 10474 Acy Road in Plantation Trailer Park. They discovered two deceased victims, Shannon Millien and John Cambre, both with multiple stab wounds. Millien's body was lying partially in the bathroom and partially in the hallway. The presence of blood that had begun to dry was noted. Cambre was located in the master bedroom on the floor in a prone position with a pool of blood underneath his body. A pocketknife was lying in the pool of blood.[1] Christopher Gautreau (Millien's brother) and James Parker (Gautreau's friend) discovered the bodies and were on the scene when the officers arrived. Upon investigation, the officers determined that Millien had been in a relationship with the defendant and the defendant was developed as a suspect in the murders.

PRO SE ASSIGNMENT OF ERROR NUMBER ONE
In the first pro se assignment of error, the defendant argues that the evidence presented by the State is insufficient to support the convictions. The defendant contends that untested forensic evidence that was not presented into evidence would have proven that someone else committed the murders. The defendant notes the lack of fingerprint evidence. The defendant also notes that while there was testimony that he had keys to the residence, there was evidence that the back door had been pried open. The defendant further notes testimony regarding the presence of a strange vehicle in the area around the time of the murders and the defendant's lack of a vehicle. Regarding a pair of white tennis shoes that were discovered outdoors during a second search of the area several days after the murders took place, the defendant raises several questions as to the size and condition of the shoes, their late discovery, the failure to test them, and the absence of blood on the bottom of them. The defendant contends that while the photographs taken by the Sheriffs Office show that the defendant did not have any scratches on his body, there was evidence to show that the female victim struggled with the assailant. The defendant claims that one of the officers involved in the photographing of the defendant commented that they had the wrong individual.[2] Thus, the defendant concludes that the State failed to exclude the reasonable hypothesis of innocence that the murders were committed by someone else,
The defendant also argues that the admission of irrelevant evidence had a prejudicial effect. The defendant specifically notes the admission of a bloody towel found at the defendant's parent's home that was never connected to the murders or the defendant.
In reviewing the sufficiency of the evidence to support a conviction, a Louisiana appellate court is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard of appellate review, adopted by the Legislature in enacting La. Code Crim. P. art. 821, is whether the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Brown, 03-0897, p. 22 (La. 4/12/05), 907 So.2d 1, 18. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Graham, 02-1492, p. 5 (La. App. 1 Cir. 2/14/03), 845 So.2d 416, 420.
As the trier of fact, a jury is free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La. App. 1 Cir. 1984). Moreover, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Richardson, 459 So.2d at 38. When a case involves circumstantial evidence and the trier of fact reasonably rejects a hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La. App. 1 Cir. 1987). A reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Smith, 600 So.2d 1319, 1324 (La. 1992). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Thomas, 05-2210, p. 8 (La. App. 1 Cir. 6/9/06), 938 So.2d 168, 174, writ denied, 06-2403 (La. 4/27/07), 955 So.2d 683.
Second degree murder is defined in pertinent part as the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm, La. R.S. 14:30.1A(1). Specific criminal intent is the state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Herron, 03-2304, p. 4 (La. App. 1 Cir. 5/14/04), 879 So.2d 778, 782.
State witness Nicole Lambert, Millien's sister, testified that Millien and the defendant dated for about eight months and lived together in Millien's trailer at some point. According to Lambert, Millien and the defendant separated about a week before the murders. Lambert further testified that before her sister's death, the defendant contacted Lambert by telephone and stated that if he could not have Millien, no one could.
Detective Gerald Wheakon of the Ascension Parish Sheriffs Office arrived at the scene on May 22, 2005, at approximately 1:13 p.m. After analyzing the scene, Detective Whealton concluded that the perpetrator might have had a cut to the left side of his body, probably on his hand. This conclusion was based on his observation of shoeprints in the hallway of the residence heading away from the back of the trailer towards the front door. It appeared that the killer headed out towards the front door and left blood drops on the left side in the living room, on the left side of the door before he went out, and on the left side going down the steps. On May 25, 2005, a search party recovered a pair of socks and white tennis shoes, a latex glove that was wrapped in one of the socks, a cigarette lighter, and two five-pound bags of sugar in a wooded area near the scene, at 10536 Acy Road. Detective Whealton assumed that the items had been recently deposited in the area because they were not weathered by the sun or rain, there was no dust or pollen coating, and there were no ants in the sugar. In a comparison, it was determined that twelve class characteristics and three individual characteristics of the bottom of one of the shoes were the same as those of a shoeprint in the trailer. The first class characteristic, for example, was at the tip of the shoe. Facing the shoe, the lines at the very tip of the shoe were vertical. An example of an individual characteristic would be wear marks.
Huma Nasir, an expert in molecular biology and forensic DNA analysis, testified that the defendant's DNA profile (provided by the Louisiana State Police Crime Lab) was consistent with the DNA on the latex glove. He concluded that the source of the DNA on the latex glove was the defendant. Joanie Wilson of the Louisiana State Police Crime Lab, an expert in forensic DNA analysis, testified that bloodstains on the left shoe were consistent with the defendant's DNA sample. The DNA sample collected from the right shoe was consistent with both victims' DNA. The bloodstain from the top of a shoeprint that was on the floor tile was consistent with a mixture of defendant's and Cambre's DNA.
The defendant lived with his parents at the time of the offenses. The defendant's father, James Troquille (herein referred to as "Mr. Troquille" or "the defendant's father"), testified at the trial. Before the defendant left home on the night of May 21, 2005 (a Saturday), his father, because of a restraining order against the defendant, warned the defendant not to go to the trailer park. The defendant called his father at 2:00 a.m. During that telephone conversation, according to Mr. Troquille's trial testimony, the defendant told his father that he loved him and his mother and that it would be the last time that his father would talk to him. The defendant also told his father that he did not have to worry about Millien and her boyfriend. The defendant asked for a ride home but did not reveal his location. Mr. Troquille told the defendant that he would not come to pick him up and that he was "not getting involved." The defendant returned home around 6:00 a.m.
At some point, James Troquille noticed that one of the defendant's fingers was cut. During direct examination, Mr. Troquille read a portion of his May 22, 2005 statement to the police wherein he stated that during the 2:00 a.m. telephone call the defendant also stated he was going to commit suicide and that he had killed Millien and her boyfriend. Mr. Troquille testified that the police statement was inaccurate and that he never told the police the defendant confessed to murdering the victims during the telephone conversation.
Melanie Garcia, the defendant's sister, testified at the trial. More than once during the early morning hours of May 22, 2005, the defendant called Garcia leaving a message on her answering machine and speaking to her directly. During the recorded message, the defendant begged her to pick him up from a certain location. He stated that he was bleeding badly and that she could reach him by calling Millien's telephone. Garcia gave a statement to the police on May 22, 2005. During direct examination, Garcia read a portion of her statement wherein she stated that the defendant told her to come pick him up and further stated that he had just killed Millien.
The defendant also called his coworker, Perry Hebert, at about 1:30 a.m. and stated that he "messed up and he appreciated all I had done for him over the years and he loved me." The defendant called Hebert a second time, after 2:00 a.m., and asked him to pick him up. Hebert told the defendant that he was unable to do so.
Detective Noel King of the Ascension Parish Sheriffs Office confirmed that the defendant was wearing a bandage on his left thumb when he was first considered a suspect and questioned. The defendant denied any knowledge or involvement in the murders. Detective King also interviewed Mr. Troquille. Detective King confirmed that Mr. Troquille stated during the interview that the defendant told Mr. Troquille that he killed Millien and her boyfriend.
During a search of the defendant's home several items were seized, including a size ten pair of black tennis shoes that were recovered from the defendant's closet.[3] A plastic bag with two white towels (with suspected bloodstains) was seized from the bathtub, and gauze-type bandage materials with a substantial amount of blood on them were seized from the kitchen garbage can. A cream colored towel that was hanging in the bathroom was also seized. The towel was damp at the time of its seizure and had reddish (suspected blood) stains on it.
We do not find the evidentiary issues raised by the defendant in his pro se brief compelling, as our review of the record reveals the following. The State presented DNA evidence to show that the defendant was present at the scene near or at the time of the murders, as he had a laceration that caused his blood to be left on the scene. Further, there was testimony that the defendant called his father and his sister shortly after the murders and confessed to his commission of the murders. In addition to speaking to his sister, the defendant left a recorded message on his sister's answering machine, wherein he begged her to pick him up from a certain location and stated that he was bleeding badly.
While the defendant argues that a "massive amount" of irrelevant evidence was admitted during the trial, he cites only one example, a bloody towel found at the defendant's home. According to La. Code Evid. art. 402, all relevant evidence is admissible, and evidence that is not relevant is not admissible. La. Code Evid. art. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Finally, evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La. Code Evid. art. 403. Erroneous admission of evidence requires reversal only where there is a reasonable possibility that the evidence might have contributed to the verdict. The inquiry is whether the reviewing court may conclude that the error was harmless beyond a reasonable doubt, that is, whether the guilty verdict actually rendered was unattributable to the error. See La. Code Crim. P. art. 921; State v. Casey, 99-0023, p. 13 (La. 1/26/00), 775 So.2d 1022, 1033, cert, denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000); State v. LeBlanc, 05-0885, p. 8 (La. App. 1 Cir. 2/10/06), 928 So.2d 599, 603. After a thorough review of the record, we are convinced beyond a reasonable doubt that the admission of the item noted by the defendant on appeal, a bloody towel recovered from his residence, did not contribute to the verdicts. Thus, even assuming the item was irrelevant, any error as to its admission was harmless beyond a reasonable doubt.
Viewing the evidence in the light most favorable to the prosecution, we find that the evidence in the record sufficiently supports the convictions. For the above reasons, pro se assignment of error number one is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER TWO
In the second pro se assignment of error, the defendant argues that he was denied a fair and impartial trial due to the testimony of Dr. Alfredo Suarez. The defendant specifically argues that the trial court allowed Dr. Suarez to testify to facts already in evidence. The defendant contends that the duplication in testimony was prejudicial and served no purpose other than to inflame the jury. The defendant notes that the State did not agree to the defense counsel's offers to stipulate to Dr. Suarez's expertise and to multiple stab wounds as the cause of death of the victims. The defendant argues that testimony admitted to establish Dr. Suarez's expertise and the cause of the deaths was prejudicial. The defendant further argues that the testimony of Dr. Suarez was duplicative of the autopsy reports. The defendant concludes that the testimony of Dr. Suarez caused the defendant irreversible prejudice that far outweighed any probative value of the testimony. Thus, the defendant also concludes that he is entitled to a new trial.
A defendant cannot control the State's method of proof. In a criminal prosecution, the State has the burden of proving each element of the crime beyond a reasonable doubt. A defendant may not exclude from the jury's consideration relevant evidence concerning a crime merely by offering to stipulate. State v. Taylor, 01-1638, p. 16 (La. 1/14/03), 838 So.2d 729, 744-45, cert, denied, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004). Moreover, the State cannot be robbed of the moral force of its case merely because the stipulation is offered. State v. Ball, 99-0428, p. 10 (La. 11/30/99), 756 So.2d 275, 280. All relevant evidence is admissible, except where limited by law. La. Code Evid. art. 402. The trial court's determination regarding the relevancy of evidence is entitled to great weight and should not be overturned absent a clear abuse of discretion. See State v. Burrell, 561 So.2d 692, 708 (La. 1990), cert, denied. 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 861(1991).
The cumulative nature of evidence or testimony does not render it inadmissible if it corroborates evidence or the testimony of witnesses on essential matters. See State v. Pooler, 96-1794, p. 43 (La. App. 1 Cir. 5/9/97), 696 So.2d 22, 51. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. La. Code of Evid. art. 702. Comment (d) to La. Code Evid. art. 702 explains, "[b]road discretion should be accorded the trial judge in his determination as to whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert."
As noted by the defendant, despite defense counsel's offers to stipulate and objections, the trial court allowed the State to elicit testimony from Dr. Suarez regarding his qualifications as an expert in the field of medicine and pathology and regarding the cause of death of the victims. The autopsy reports of the victims were introduced in connection with Dr. Suarez's testimony. Dr. Suarez performed the autopsies and prepared the reports. We find no abuse of discretion in the trial court's allowance of Dr. Suarez's testimony. This assignment of error lacks merit.

PRO SE ASSIGNMENT OF ERROR NUMBER THREE
In the third pro se assignment of error, the defendant argues that he has been denied his constitutional right to judicial review based on the lack of a complete record of all of the evidence. The defendant specifically argues that the failure to transcribe arguments on objections that were held at the bench denied him the right to present other assignments of error.
Louisiana Constitution article I, section 19, guarantees defendants a right of appeal based upon a complete record of all evidence upon which the judgment is based. Additionally, in felony cases, the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel. La. Code Crim. P. art. 843. The Article 843 reference to "objections" and "arguments" generally only applies to objections made in open court and the arguments of counsel in closing, because only those objections and arguments rise to a level of materiality sufficient to invoke Article 843. State v. Scott, 06-1103, p. 12 (La. App. 1 Cir. 12/28/06), 952 So.2d 60, 68, writ denied, 07-0275 (La. 10/5/07), 964 So.2d 384. Similarly, the reference in La. Const, art. I, § 19 to record evidence does not encompass bench conferences that do not satisfy the materiality requirements of Article 843. Scott, 06-1103 at p. 12, 952 So.2d at 68.
Material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal will require reversal. See State v. Robinson, 387 So.2d 1143, 1144-45 (La. 1980) (reversal was required when the record failed to contain the testimony of a State and a defense expert witness); State v. Ford, 338 So.2d 107, 110 (La. 1976) (reversal was required when the record was missing the testimony of four State witnesses and the voir dire of prospective jurors). Conversely, inconsequential omissions or slight inaccuracies do not require reversal. Scott, 06-1103 at p. 11, 952 So.2d at 67. In State v. Pinion, 06-2346, p. 7 (La. 10/26/07), 968 So.2d 131, 134, the Louisiana Supreme Court noted that it had never established an absolute rule as to whether bench conferences had to be recorded as per La. Code Crim. P. art. 843. As a general rule, the failure of the record to reflect the argument of counsel on objections, even when made in open court, does not affect a defendant's appeal because it does not hinder adequate review of the trial court's ruling. Thus, the failure to record bench conferences will ordinarily not affect the direct review process when the record suggests that the unrecorded bench conferences had no discernible impact on the proceedings and did not result in any specific prejudice to the defendant. Pinion, 06-2346 at pp. 7-8, 968 So.2d at 134-35.
Herein, the defendant has failed to demonstrate any specific prejudice that he suffered as a result of the bench conferences not being transcribed. Nothing in the record suggests that the bench conferences had any discernible impact on the proceedings. The defendant has not stated any additional issue or argument that he would have raised if the bench conferences had been transcribed. Nor has the defendant developed any specific argument as to how adequate review was hindered. Accordingly, we find no reversible error in this regard. This assignment of error is without merit.

COUNSELED ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
In his first assignment of error, the defendant argues that the trial court erred in denying his motion for mistrial. The motion for mistrial was based on the admission of testimony by Detective King referring to a statement allegedly made by the defendant, although the prosecutor and Detective King assured the defense at the time of the suppression hearing that the defendant did not give any statements following his arrest. While the statement consisted of a denial of knowledge of or involvement in the instant offenses, the defendant argues that the statement was inculpatory by nature since DNA evidence presented during the trial showed that the defendant was at the scene near or at the time the murders took place, but before the bodies were discovered by others. Further, there was trial testimony that the defendant relayed his commission of the murders to his relatives before the bodies were discovered. The defendant argues that the State's deliberate misrepresentation of the absence of a statement by the defendant constituted professional misconduct that prejudiced the defense and warranted the declaration of a mistrial due to the discovery violation. In the second assignment of error, the defendant contends that the prosecution failed to notify the defense of its intent to use the statement and that the trial judge's denial of the motion for mistrial sanctioned professional misconduct in violation of the Code of Judicial Conduct and the defendant's due process rights. The defendant cites La. Code of Crim. P. arts. 716C, 768, and 729.3 and Rule 3.3(a) of the Rules of Professional Conduct in support of these arguments.
At the outset, we note that the defendant did not contemporaneously object to the testimony in question. During the direct examination of Detective King by the State, the following colloquy, in pertinent part, took place:
Q. So after you advised him of his rights, what did you ask him?
A. I questioned him about his involvement in the murder of Shannon Gautreau and Johnny Cambre at which time he denied any knowledge or any involvement in the matter.
At that point, the defendant initiated an off-the-record bench discussion. However, the record does not reflect an objection. Following the bench discussion, the State began to question Detective King regarding his interview of the defendant's father, James Troquille.
After the State rested its case-in-chief, the defendant moved for a mistrial, noting that the defense had previously filed a motion to suppress any statement the defendant may have made. The defense counsel further noted that at the time of the hearing on the motion to suppress, the State and the detectives present at the hearing, including Detective King, assured the defense that there were no statements made by the defendant. The State argued that the testimony was of no surprise to the defense counsel because he was given Detective King's report of the investigation including the defendant's response. The State further noted that the defendant did not make any inculpatory statements and instead made an exculpatory claim that he did not know anything and did not commit the offenses. The State concluded that the defendant had not been prejudiced. In denying the motion for mistrial, the trial court agreed with the State's assertion that the statement was exculpatory and noted that the defendant was not prejudiced. The defense called two witnesses before resting.
La. Code Crim. P. art. 716C regulates discovery of statements made by a defendant as follows:
Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer. Pursuant to La. Code Crim. P. art. 729.3, the State has a continuing duty to disclose any additional evidence discovered subsequent to compliance with an order issued.
Discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony, to permit the defense to meet the State's case, and to allow proper assessment of the strength of its evidence in preparing a defense. State v. Harris, 00-3459, p. 8 (La. 2/26/02), 812 So.2d 612, 617. In the event of a discovery violation, the court may order the party to permit the discovery, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate. La. Code Crim. P. art. 729.5A. A conviction will not be reversed on the basis of the State's discovery violation unless prejudice is shown. Harris, 00-3459 at p. 8, 812 So.2d at 617.
In accordance with La. Code Crim. P. art. 768, if the State intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the State's opening statement (unless the defendant has been granted pretrial discovery). If it fails to do so, a confession or inculpatory statement shall not be admissible in evidence. The purpose of the scheme of La. Code Crim. P. arts. 766-768 is to prevent surprise and allow adequate time for preparation of the defense. State v. Parker, 436 So.2d 495, 499 (La. 1983); State v. Russell, 416 So.2d 1283, 1288 (La. 1982), cert, denied, 459 U.S. 974, 103 S.Ct. 309, 74 L.Ed.2d 288 (1982). An inculpatory statement admits a fact, circumstance or involvement which tends to establish guilt or from which guilt may be inferred. State v. Brumfield, 329 So.2d 181, 187 (La. 1976).
Mistrial is a drastic remedy and, except in instances in which mistrial is mandatory, is warranted only when trial error results in substantial prejudice to a defendant, depriving him of a reasonable expectation of a fair trial. State v. Smith, 430 So.2d 31, 44 (La. 1983); State v. Fisher, 95-0430, p. 7 (La. App. 1 Cir. 5/10/96), 673 So.2d 721, 725-26. Determination of the existence of unnecessary prejudice warranting a mistrial is within the sound discretion of the trial judge. State v. Manning, 03-1982, pp. 76-77 (La. 10/19/04), 885 So.2d 1044, 1109, cert, denied, 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005).
As noted, the record does not reflect a contemporaneous objection at the time of the testimony in question. Under La. Code Crim. P. art. 841 and La. Code Evid. art. 103A(1), a contemporaneous objection is required to preserve an error for appellate review. The purpose of the contemporaneous objection rule is to allow the trial judge the opportunity to rule on the objection and thereby prevent or cure an error. State v. Hilton, 99-1239, p. 12 (La. App. 1 Cir. 3/31/00), 764 So.2d 1027, 1035. Irregularities or errors cannot be availed of on appeal if they are not objected to at the time of the occurrence. State v. Walker, 94-0587, p. 4 (La. App. 1 Cir. 4/7/95), 654 So.2d 451, 453. Thus, arguably, the issues raised herein were not preserved for appellate review. See State v. Roberts, 06-765, pp. 39-40 (La. App. 3 Cir. 1/17/07), 947 So.2d 208, 231-32, writ denied, XXXX-XXXX (La. 10/5/07), 964 So.2d 938.
In Roberts, the court held that the defendant failed to preserve for appellate review a claim that the trial court erred by allowing the State to refer, in its opening statement, to the codefendanfs conviction and sentence for second degree murder based on the incident at issue. Therein, the defendant did not contemporaneously object during the State's opening statement, but rather only made a motion for mistrial just before resting his case. The Roberts court relied on State v. Phillips, 03-0304, p. 4 (La. App. 4 Cir. 7/23/03), 853 So.2d 675, 677-78, for guidance. In Phillips, the defendant complained that the trial court had erred by denying his motion for a mistrial after the State made reference, during cross-examination, to a separate allegation that he had committed attempted murder. The defendant did not object, and briefly asked questions in an apparent attempt to clarify the situation the witness had mentioned. Later, after resting his case, the defendant moved for a mistrial, which the trial court denied. Citing the contemporaneous objection rule, the Phillips court held that the defendant had failed to preserve the issue for review since he did not object at the time it arose.
As noted herein, there was an off-the-record discussion immediately following the testimony in question, and the defendant did ultimately move for a mistrial At any rate, the defendant concedes that he was given open-file discovery. In opposing the motion for mistrial, the prosecutor stated that the defendant had Detective King's report containing the statement at issue. While on appeal the defendant contends that the discovery did not contain Detective King's report, the defendant did not make such a claim when the State noted otherwise in its opposition to the motion for mistrial. Although the defendant was assured, at the hearing on the motion to suppress, that there were no statements by the defendant, we cannot say that the misrepresentation was deliberate.[4]
Also, we find that the defendant has failed to show prejudice. On appeal, the defendant notes that he did not testify at the trial, leaving the jury to speculate as to how his blood came to be in the trailer where the murders took place. The defendant contends that he was impaired in presenting manslaughter, or any other alternative defense, in light of the introduction of the statement at issue. However, the defendant did not make this argument at the time of his motion for mistrial. The defendant made no argument as to how the introduction of the statement prejudiced him. Moreover, during the hearing on the Prieur motion (which took place seven days before the trial began), the defense attorney stated there was no defense such as an alibi or an accident, and that the defendant would simply be relying on the general presumption of innocence. Also, during the opening statements, the defendant did not argue manslaughter or any other defense.
Considering the evidence of the defendant's guilt and the foregoing, we cannot say that the trial court abused its discretion or was violated the Code of Judicial Conduct, as alleged in the second counseled assignment of error, in denying the defendant's motion for mistrial. These assignments of error lack merit.

REVIEW FOR ERROR
In his pro se brief, the defendant asks that this court examine the record for error under La. Code Crim. P. art. 920(2). This court routinely reviews the record for such errors, whether or not such a request is made by a defendant. Under La. Code Crim. P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found no reversible errors. See State v. Price, 05-2514, pp. 18-22 (La. App. 1 Cir. 12/28/06), 952 So.2d 112, 123-25 (en banc), writ denied, XXXX-XXXX (La. 2/22/08), 976 So.2d 1277.

DECREE
For the above reasons we affirm the convictions and sentences.
CONVICTIONS AND SENTENCES AFFIRMED
NOTES
[1] This particular pocketknife was determined not to be the murder weapon.
[2] The defendant did not specify which officer made such a statement and has not provided a record reference or any evidence of such a statement.
[3] The pair of white tennis shoes that were recovered from a wooded area located in close proximity to the murder scene was a size ten and one-half.
[4] While we do not approve of or sanction the prosecutor's actions, under the circumstances of this case, we find that the trial court did not abuse its discretion in denying the motion for mistrial.